IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL D. HORTON,
    Petitioner,
  v.
UNITED STATES OF AMERICA,
    Respondent.

:
:
:
:
:

Case No. 3:03-cr-157(01)
JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING PETITIONER'S MOTION FOR MODIFICATION OF AN IMPOSED TERM OF IMPRISONMENT PURSUANT TO 18 U.S.C. § 3582(c)(2) AND *HOLLOWAY V. UNITED STATES* (DOC. #134)

---

This matter is currently before the Court on Petitioner Michael D. Horton's Motion for Modification of an Imposed Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(2) and *Holloway v. United States*, Doc. #134. The Government has filed a Memorandum in Opposition, Doc. #135, and Petitioner has filed a Reply, Doc. #136.

In December of 2005, Horton was sentenced to a mandatory minimum of 240 months in prison after pleading guilty to Conspiracy to Possess with Intent to Distribute and to Distribute Heroin, Cocaine Base, and Xanax, which caused the death of another, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), all in violation of 21 U.S.C. § 846. Horton maintains that, because the United States Sentencing Commission has lowered the applicable sentencing range, his sentence should be modified in accordance with 18 U.S.C. § 3582(c)(2). In the alternative, he argues that, because his work records and discipline records at the prison are exemplary, and because his rehabilitation efforts

have been extraordinary, the Court should resentence him to a shorter term of imprisonment.

The Court has no authority to modify a previously-imposed term of imprisonment unless one of the exceptions set forth in 18 U.S.C. § 3582 applies. Horton relies on the exception set forth in § 3582(c)(2):

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that—
>
> \*\*\*
>
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

Horton points to Amendment 782 to the United States Sentencing Guidelines ("U.S.S.G."), which reduced by two levels the offense levels assigned to the quantities that trigger the statutory mandatory minimum penalties in U.S.S.G. § 2D1.1, and made parallel changes to U.S.S.G. § 2D1.11. This Amendment is to be applied retroactively. Horton maintains that Amendment 782 should be applied to reduce his net offense level by two points.

The Government argues, however, that Horton's base offense level was determined not by the drug quantity tables in U.S.S.G. § 2D1.1, but by U.S.S.G. § 2D1.1(a)(2), which provides that if death results from the use of the controlled substance sold by the defendant, the base offense level is 38. Amendment 782 did not

affect § 2D1.1(a)(2). *See, e.g., United States v. Davila*, 651 F. App'x 112, 114 (3d Cir. 2016) (refusing to apply Amendment 782 where defendant's base offense level was determined by § 2D1.1(a)(2)). Accordingly, Horton's advisory sentencing guideline range remains at 360 months to life. Horton was sentenced to the mandatory minimum sentence of 240 months. Given that Horton's sentencing range was not lowered by the Sentencing Commission, the Court lacks authority under § 3582(c)(2) to modify his sentence.

In his Reply brief, Horton tries to overcome this obstacle by arguing, for the first time, that the Court erred in its application of § 2D1.1(a)(2). He maintains that the Court should have applied § 2D1.1 instead, which would then permit the Court to modify his sentence in accordance with Amendment 782.

A motion to modify a sentence under §3582(c)(2) is not an appropriate vehicle for challenging the Court's application of the Sentencing Guidelines. But even if the Court were to consider this argument, it lacks merit.

Horton points out that he pled guilty to only the conspiracy count; the distribution count was dismissed. According to Horton, because a conspiracy ends when the unlawful act is completed, his act of selling heroin, which resulted in the death of another, cannot be considered in determining the applicable guideline range on the conspiracy charge.

In support, Horton cites to *United States v. Rebmann*, 321 F.3d 540 (6th Cir. 2003). In *Rebmann*, the defendant pled guilty to distribution of a small amount of heroin, in violation of 21 U.S.C. § 841(a) and (b)(1)(C). At the initial sentencing hearing, the Government argued that, because defendant's ex-husband died as a result of this

3

distribution, § 2D1.1(a)(2) should be applied. The district court found, by a preponderance of the evidence, that the death had resulted from the distribution, and sentenced the defendant to 292 months in prison.

On appeal, the Sixth Circuit held that the "if death results" provision of § 841(b)(1)(C) was an element of the crime that must be proven beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000). It vacated the sentence and remanded the matter so that the district court could determine whether the Government had proven, beyond a reasonable doubt, that the ex-husband's death was caused by the distribution of heroin. 321 F.3d at 541.

On remand, the Government withdrew its request for an enhancement under § 841(b)(1)(C), but argued for enhancement under U.S.S.G. § 2D1.1(a)(2). After holding an evidentiary hearing, the court found that the Government had failed to satisfy its burden of proof beyond a reasonable doubt. The court sentenced the defendant to 24-30 months. *Id.* at 541-42.

The Government again appealed, arguing that the resulting death was relevant conduct that could be considered under a preponderance of the evidence standard. The Sixth Circuit disagreed. It noted that §2D1.1(a)(2) applies if "the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance." The term "'offense of conviction' describes only the precise conduct constituting the crime for which the defendant was convicted, and does not include non-offense relevant conduct." *Id.* at 543-44. Accordingly, "absent a finding beyond a reasonable doubt that death resulted from the distribution," the defendant was not eligible for an enhancement under § 2D1.1(a)(2). *Id.* at 544.

4

*Rebmann* is of no help to Horton. Horton was indicted on two counts: (1) distributing heroin, which caused the death of William Kevin Kelley, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and (2) conspiracy to possess with intent to distribute and to distribute heroin, cocaine base and Xanax, in violation of 21 U.S.C. § 846. The indictment specifically alleges that it was part of this conspiracy that he distributed heroin to his customers, and that William Keven Kelley died as a result of this distribution. Horton's sale of heroin to Kelley, and Kelley's resulting death, are listed as overt acts in furtherance of the conspiracy. Doc. #1, PageID##1-3.

The Plea Agreement specifically states that Horton will plead guilty to Count 2 of the indictment, which charges him with conspiracy to possess with intent to distribute and to distribute several controlled substances, "which caused the death of another, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C)." Doc. #68, PageID#598. Notably, the drug conspiracy statute provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. Under § 841(b)(1)(C), a mandatory minimum 20-year sentence must be imposed if "death or serious bodily injury results" from the use of heroin.

Moreover, Horton acknowledged in the Plea Agreement that he was subject to a mandatory minimum sentence of 20 years in prison. Doc. #68, PageID#598. The attached Statement of Facts, which Horton agreed were accurate and true, indicated that he sold heroin to William Kevin Kelley, who "died as a result of the ingestion of the heroin." *Id.* at PageID#603. Under these circumstances, the offense of conviction

establishes that death resulted from the use of the controlled substance. Horton's admission eliminated the need for the Government to prove beyond a reasonable doubt that Horton's conduct caused Kelley's death. *United States v. Lawler*, 818 F.3d 281, 285 (7th Cir. 2016) ("§ 2D1.1(a)(2) applies only when a resulting death (or serious bodily injury) was an element of the crime of conviction, proven beyond a reasonable doubt *or admitted by the defendant*.").

For the reasons set forth above, the Court finds that Amendment 742 is inapplicable. Accordingly, the Court lacks authority under § 3582(c)(2) to modify Horton's sentence.

Horton next argues that, even if the Court lacks authority under § 3582(c)(2) to modify his sentence, it should nevertheless exercise its discretion to vacate his sentence and resentence him to a lower term of imprisonment based on his exemplary behavior in prison and his successful rehabilitation efforts. In support, he cites to *United States v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014). In that case, the defendant, who rejected a plea offer and chose to go to trial instead, was convicted and sentenced to more than 57 years in prison for multiple carjackings involving the use of a firearm. The stacking of three §924(c) convictions for the use of a firearm dictated this lengthy sentence, which was approximately 42 years longer than he would have served had he accepted the Government's plea offer.

After Holloway had served approximately 20 years of his 57-year sentence, the judge asked the Government to exercise its discretion to agree to an order vacating two or more of the 924(c) convictions so that Holloway could be resentenced to a shorter term. During his time in prison, Holloway had very few disciplinary problems, and had

participated in numerous rehabilitation programs. The Government agreed to the judge's request, which allowed the court to vacate two of the three 924(c) convictions and resentence Holloway.

Horton cites to a few other cases in which the court, with the Government's approval, has resentenced defendants despite the lack of any apparent statutory authority to do so. *See, e.g., United States v. Anandani*, Case No. 1:11-cr-763 (E.D.N.Y. Oct. 25, 2013).

The Government maintains that *Holloway* is factually distinguishable, and the Court agrees. Horton admitted to selling illegal drugs that resulted in the death of one of his customers, and he was already sentenced well below the advisory guideline range of 360 months to life imprisonment. Under these circumstances, the Government does not believe that Horton's 240 month sentence can be deemed "unjust." Therefore, it is unwilling to agree to a reduced sentence. Without the Government's approval, the Court has no authority to modify Horton's term of imprisonment.

The Court applauds Horton's rehabilitation efforts, his exemplary work record, and his behavior while in prison. Nevertheless, for the reasons discussed above, the Court lacks authority to modify the sentence that was previously imposed. Accordingly, the Court OVERRULES Horton's Motion for Modification of an Imposed Term of Imprisonment, Doc. #134.

Date: March 26, 2018

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

## STATEMENT OF FACTS

## UNITED STATES v. Michael Dajuan Horton

Between March, 2000 and April 27, 2001, **Michael Dajuan Horton**, along with a female associate identified as "D", and other co-conspirators, agreed to possess and distribute heroin, cocaine base, commonly known as "crack", and Xanax in the Dayton, Ohio area and elsewhere for personal profit.

**Michael Dajuan Horton** obtained the controlled substances from various sources of supply. He at times personally sold the drugs, but often he directed others who sold the drugs at various locations on his behalf. There were at least four other individuals who sold the controlled substances for **Michael Dajuan Horton**.

During some periods of the conspiracy, **Michael Dajuan Horton** was incarcerated at an Ohio state prison. While in the prison, he continued to manage the operation of the drug conspiracy by communicating in three-way telephone calls with his suppliers and his associates (including "D"). In these calls, he discussed and directed the operation of the conspiracy. On numerous occasions, **Michael Dajuan Horton** possessed with intent to distribute Heroin and Crack cocaine and co-conspirator "D" possessed with intent to distribute Xanax.

While imprisoned, **Michael Dajuan Horton**, along with "D", engaged the services of a relative of **Michael Dajuan Horton** to sell heroin and crack cocaine which they supplied to the relative. The relative sold the drugs out of 1032 Wayne Avenue, Apartment 14, Dayton, Ohio. The relative performed these tasks for the defendant and "D" from in or about December 2000, through in or about April 2001. During the conspiracy, the relative possessed a firearm which the relative used to protect himself, the drugs, and the drug proceeds while the relative sold drugs for the benefit

of **Michael Dajuan Horton** and "D". **Michael Dajuan Horton** and "D" paid the relative a daily salary for his work, and the drug proceeds of the sales by the relative were turned over to **Michael Dajuan Horton** and/or "D".

On or about April 24, 2000, two male, adult individuals were at the 1032 Wayne Avenue apartment building where **Michael Dajuan Horton** was residing with "D". **Michael Dajuan Horton** sold an amount of heroin to these two individuals valued at less than $40 to the two individuals. Both these individuals ingested the heroin. After ingesting the heroin, one of the individuals, William Kevin Kelly, died as a result of the ingestion of the heroin.

In April, 2001, **Michael Dajuan Horton** and "D" devised a plan for "D" to smuggle Xanax tablets into the London Correctional Facility in which **Michael Dajuan Horton** was incarcerated. "D" took the drugs to the prison and attempted to convey the drugs to **Michael Dajuan Horton**, but she was caught by law enforcement authorities before she could give them to **Michael Dajuan Horton**.

For the information of the Court, Heroin is a schedule I controlled substance, cocaine base, also known as Crack Cocaine, is a schedule II controlled substance, and Xanax, also known as Alprazolam, is a schedule IV controlled substance.

2